[Cite as *State v. Thompson*, 2011-Ohio-3631.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## CRAWFORD COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                     CASE NO.  3-10-23

      v.

PATRICK A. THOMPSON,                 O P I N I O N

      DEFENDANT-APPELLANT.


Appeal from Crawford County Common Pleas Court
Trial Court No. 10-CR-0041

Judgment Affirmed

Date of Decision:    July 25, 2011


APPEARANCES:

    *Shane M. Leuthold*  for Appellant

    *Clifford J. Murphy*  for Appellee


ROGERS, P.J.

**{¶1}** Defendant-Appellant, Patrick Thompson ("Thompson" or "Defendant") appeals the judgment of the Court of Common Pleas of Crawford County, convicting him of one count of trafficking in drugs. On appeal, Thompson argues that the conviction was against the manifest weight of the evidence; and, that the trial court erred in sentencing him to the maximum period of incarceration authorized by statute. Finding that the evidence supported the jury's verdict and that the trial court did not abuse its discretion in imposing Thompson's sentence, we affirm the decision of the trial court.

**{¶2}** On April 9, 2010, a Crawford County Grand Jury indicted Thompson on two counts of trafficking in drugs in violation of R.C. 2925.03(C)(6)(a), felonies of the fifth degree. The two charges stemmed from an investigation by METRICH, a ten-county regional task force, that conducted two controlled buys from Thompson through the use of a confidential informant ("CI"). On April 19, 2010, Thompson appeared at arraignment and entered a plea of not guilty. On September 16, 2010, the matter proceeded to a jury trial. The jury rendered a verdict of not guilty on count I and guilty on count II. On October 27, 2010, the trial court sentenced Thompson to twelve months in prison.

**{¶3}** At trial, the State presented three witnesses, including: Detective Chris Hydinger, a deputy sheriff with the Crawford County Sheriff's Office; Captain Joe Greathouse of the Bucyrus Police Department; and Anita Hinton ("the CI"), the

confidential informant. The trial court admitted the State's two audio recordings of the controlled buys recorded by a wire worn by the CI, two bags of heroin, the corresponding lab reports testing the substance from each bag, and the joint stipulation as to the laboratory results of the substance of each bag. The defense presented Appellant Thompson. The State's case in chief adduced the following relevant evidence.

{¶4} Detective Heydinger testified that Thompson has been under investigation by the Crawford County Sheriff's Office, the Galion Police Department, and the Ohio State Highway Patrol since 2008 for his involvement with narcotics. On August 10, 2009, Eric Bohach, a detective with the Galion Police Department, contacted him stating that the CI had a phone conversation with Thompson whereby Thompson stated he would sell the CI heroin. On the evening of August 10, 2009, the CI and her vehicle were searched for contraband and weapons, the CI was provided with $70.00, and was fitted with an audio transmitter and digital recorder which allowed the CI and Detective Bohach to communicate as well as record the transaction. Detective Heydinger testified that, "at some point in time . . . there was a recovery of heroin" (Trial Tr., p. 67), and that the CI gave the sheriff's office a plastic bag, which was later identified to contain heroin.

{¶5} On cross-examination, Detective Heydinger testified that the CI has a criminal history, but that she is not receiving any preferential treatment for her assistance in this case, and that he did not know whether the CI used heroin with Thompson. He further testified that he did not actually see the narcotics purchase on August 10, 2009.

{¶6} Captain Greathouse testified that Detective Heydinger contacted him informing him of an ongoing investigation of Thompson for drug trafficking, and that a controlled buy was arranged between a CI and Thompson on August 17, 2009. Captain Greathouse testified that on August 17, 2009, the CI's vehicle and person were searched for contraband, the CI was given $60.00 to purchase heroin and was fitted with an audio recording device, and that at about eight o'clock P.M., he rode with the CI to Thompson's house. He explained that it was still daylight by the time he and the CI arrived to Thompson's house; that when they pulled into the driveway, the CI honked her horn, parked the car, and exited the vehicle; that he remained in the vehicle but was able to see the back door; that the CI knocked on the back door; and, that Thompson exited the residence. He continued to testify that he observed the CI and Thompson have a conversation; that the CI handed money to Thompson; that Thompson handed something to the CI; that the CI walked back to the vehicle; and, that when she reentered the vehicle, she handed Captain Greathouse two balls of foil that contained heroin.

{¶7} The CI testified that on August 10, 2009, she gave Thompson money; that Thompson gave her heroin; and, that she turned the heroin over to the police. She explained that on August 17, 2009, she went to Thompson's house with Detective Greathouse; that she paid Thompson $70.00; and, that Thompson gave her the drugs. She stated that she bought drugs from Thompson, but that she never used drugs with him and never threatened him. On cross-examination, the CI testified that she would "do what [she] need[ed] to do in order to get somebody to sell [her] drugs." Trial Tr., p. 131. The State then rested its case-in-chief.

{¶8} Thompson testified in his defense. He testified that he was acquaintanced with the CI and her husband for approximately two years prior to the trial, and that he, the CI, and her husband would all use heroin together. Thompson testified that the CI made several sexual advances towards him once her husband had "passed out." Trial Tr., p. 143. Thompson testified that on August, 10, 2009, the CI called Thompson about five or six times asking Thompson to sell her drugs, and that he refused, but that the CI continued to call him, offered to have sex with him, and said that she would leave her husband and the two of them would enter rehabilitation together. Thompson testified that he gave in and agreed to make a phone call for her. Thompson said that, on August 10, 2009, he had someone come over with drugs for the CI, that the CI came over, gave him $70.00, that he gave the $70.00 to the man who brought the drugs, but

that he had to pay $5.00 extra as the CI did not have enough money. Thompson testified that he did not feel comfortable selling drugs to the CI because he does not engage in selling drugs. Lastly, Thompson testified that he never would have sold drugs to the CI if not for her phone calls and promises.

{¶9} On cross-examination, Thompson admitted that he possessed and sold the CI heroin on August 10 and 17, 2009, but testified that he was entrapped. The defense rested its case and the matter was submitted to the jury. The jury convicted Thompson on the second count of trafficking in drugs for the sale on August 17, 2009, but found him not guilty on the first count of trafficking in drugs for the sale on August 10, 2009. The trial court sentenced Appellant to twelve months in prison. It is from the conviction and the sentence that Appellant brings his appeal, assigning the following errors for our review.

*Assignment of Error No. I*

**THE CONVICTION OF APPELLANT, PATRICK THOMPSON, WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

*Assignment of Error No. II*

**THE TRIAL COURT ERRED IN ITS DECISION TO SENTENCE PATRICK A. THOMPSON TO THE MAXIMUM SENTENCE WHEN APPLYING THE FELONY SENTENCING GUIDELINES.**

*Assignment of Error No. I*

**{¶10}** In his first assignment of error, Thompson alleges that the conviction was against the manifest weight of the evidence. Particularly, Thompson asserts that because the jury found him not guilty on count I due to entrapment, the jury also should have found him not guilty on count II, as the fact pattern was the same for both counts. We disagree.

**{¶11}** The State contends that there is no evidence that the jury found Thompson not guilty of count I as the result of entrapment. Specifically, the State cites the absence of any findings regarding entrapment in the verdict forms. Rather, the State contends that Detective Greathouse's testimony, the recovery of the heroin, and the recorded dialogue were sufficient to establish Thompson's guilt on August 17, 2009. We agree.

**{¶12}** When an appellate court analyzes a conviction under the manifest weight standard it must review the entire record, weigh all of the evidence and all of the reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, superseded by constitutional amendment on other grounds as stated by *State v. Smith,* 80 Ohio St.3d 89, 1997-Ohio-355, quoting *State v. Martin*

(1983), 20 Ohio App.3d 172, 175. Only in exceptional cases, where the evidence "weighs heavily against the conviction," should an appellate court overturn the trial court's judgment. Id.

{¶13} In this case, the manifest weight of the evidence supports the conviction. The only evidence that does not support the conviction is the testimony of the Appellant himself. The trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimony is credible. *Hickerson v. Hickerson*, 3d Dist. No. 5-10-08, 2010-Ohio-4070, ¶23, citing *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273. The trier of fact is free to believe or disbelieve all or any of the testimony. *State v. Jackson,* 10th Dist. No. 01AP-973, 2002-Ohio-1257, ¶1. Although an appellate court must act as a "thirteenth juror" when considering whether the manifest weight of the evidence requires reversal, it must give great deference to the fact finder's determination of the witnesses' credibility. *State v. Covington,* 10th Dist. No. 02AP-245, 2002-Ohio-7037, ¶28. The audio recordings, Detective Greathouse's testimony, and the CI's testimony all support the jury's conviction. Therefore, we cannot conclude that the conviction was against the manifest weight of the evidence. Accordingly, we overrule Thompson's first assignment of error.

*Assignment of Error No. II*

**{¶14}** In his second assignment of error, Thompson argues that the trial court erred in imposing the maximum term of incarceration allowed for a felony of the fifth degree. Specifically, Thompson asserts that the trial court arrived at the sentence in derogation of R.C. 2929.14, as it found that Thompson did not commit the worst form of the offense, and as Thompson does not pose the greatest likelihood of recidivism. Rather, Thompson claims that the trial court imposed the maximum sentence because it believed that trafficking in heroin should be punished more severely than a fifth degree felony.

**{¶15}** The State argues that the trial court did not commit error in its sentencing as Ohio law affords full discretion to impose prison terms within the appropriate felony range. Because the trial court considered the purposes and principles of sentencing, Thompson's prior record, Thompson's failure to respond favorably to community control sanctions, and Thompson's likelihood of recidivism, Appellant's second assignment of error should be overruled. We agree.

**{¶16}** An appellate court must conduct a meaningful review of the trial court's sentencing decision. *State v. Daughenbaugh,* 3d Dist. No. 16-07-07, 2007-Ohio-5774, ¶8, citing *State v. Carter,* 11th Dist. No. 2003-P-0007, 2004-Ohio-1181. A meaningful review means "that an appellate court hearing an appeal of a

felony sentence may modify or vacate the sentence and remand the matter to the trial court for re-sentencing if the court clearly and convincingly finds that the record does not support the sentence or that the sentence is otherwise contrary to law."[1] *Daughenbaugh,* 2007-Ohio-5774, at ¶8, citing *Carter,* 2004-Ohio-1181, at ¶44; R.C. 2953.08(G).

{¶17} The trial court has full discretion to sentence an offender to any term of imprisonment within the statutory range without a requirement that it make findings or give reasons for imposing the maximum sentence, more than the minimum sentence, or ordering sentences to be served consecutively. *State v. Foster,* 109 Ohio St.3d 1, 2006-Ohio-856, at paragraph seven of the syllabus.

{¶18} When sentencing an offender, the trial court must consider the factors set forth under R.C. 2929.12(B), (C), (D), and (E) relating to the seriousness of the offender's conduct and the likelihood of the offender's recidivism. R.C. 2929.12(A); see also *State v. Ramos,* 3d Dist. No. 4-06-24, 2007-Ohio-767, ¶25. However, the trial court is not required to make specific findings of its consideration of the factors. *State v. Kincade,* 3d Dist. No. 16-09-20, 2010-Ohio-1497, ¶8, citing *State v. Arnett,* 88 Ohio St.3d 208, 2000-Ohio-302. Nor is the trial court required to state on the record that it has considered the statutory

---

[1] While we use the clearly and convincingly contrary to law standard of review, we note that our decision in this case would be identical if we had used an abuse of discretion standard of review.

criteria or even discussed them. *State v. Foust*, 3d Dist. No. 3-07-11, 2007-Ohio-5767, ¶27.

**{¶19}** Trafficking in drugs in violation of R.C. 2925.03(C)(6)(a) is a felony of the fifth degree. R.C. 2929.14(A)(5) states that, "[f]or a felony of the fifth degree, the prison term shall be six, seven, eight, nine, ten, eleven, or twelve months." In the instant case, the trial court sentenced Thompson to a twelve-month prison term upon consideration of the seriousness of his conduct and his likelihood of recidivism. Therefore, we find that the trial court's imposition of the maximum sentence prescribed by statute is not clearly and convincingly contrary to law. Accordingly, we overrule Thompson's second assignment of error.

**{¶20}** Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW and WILLAMOWSKI, J.J., concur.**

**/jlr**